JAMES E. HELLER and Others, Appellants, v. THE ALLEN-TOWN MANUFACTURING COMPANY, Respondent.

*Contract for the sale of merchandize by weight — when the certificate as to the weight, by a person specified in the contract binds the purchaser.*

In an action, brought upon a promissory note, a counter-claim for damages was interposed by the defendant, founded upon a written agreement by which the plaintiff sold to the defendant "three hundred to four hundred tons raw kainit, * * * to be shipped in bulk from German ports to the port of New York, during the months of April and May, 1883, at seven dollars and twenty-five cents ($7.25) per ton, of two thousand two hundred and forty American pounds, on foreign invoice weights. Terms cash against German analysis and European weight return on delivery of goods ex-vessel at New York."

It appeared upon the trial that kainit was taken from a mine in Germany which belonged to the government and shipped from a place called Staasfurt; that the plaintiff had purchased 320 tons of kainit, and paid for that amount through a banking-house; that they understood that amount had been shipped to New York,

and had received from the defendant, upon the presentation of the papers speci-
fied in the contract, its note for that amount; that upon the arrival of the kainit a
shortage of eighty-five tons was discovered, for which the defendant interposed
the counter-claim.

Witnesses called by the plaintiff testified, without objection or contradiction on
the part of the defendant, that they were accustomed to deal in kainit and that
the words "cash against German analysis and European weight return" meant
cash on the presentation of the documents showing the cost of insurance and
freight and the quantity shipped.

*Held,* that the counter-claim could not be sustained as the defendant was con-
cluded by the contract from controverting the facts stated in the papers therein
specified.

APPEAL from a judgment in favor of the defendant, entered upon
the verdict of a jury, and from an order denying a motion for a
new trial, made upon the minutes of the justice before whom the
action was tried.

*Lewis. Johnson,* for the appellants.

*Benjamin F. Dos Passos,* for the respondent.

BRADY, J.:

This action was brought upon a promissory note. The defense
was a counter-claim for damages growing out of the failure of the
plaintiffs to perform their agreement for the delivery of 320 tons
of kainit, and which contract is as follows:

"NEW YORK, *April* 20, 1883.

"We have this day sold to the Allentown Manufacturing Com-
pany, of Allentown, Pa., about 300 to 400 tons raw kainit, guaran-
teed not less than 23% sulphate of potash, by foreign analysis, to
be shipped in bulk from German ports to the port of New York,
during the months of April and May, 1883, at seven dollars and
twenty-five cents ($7.25) per ton of 2,240 American pounds, on
foreign invoice weights.

"Terms cash against German analysis and European weight return
on delivery of goods ex-vessel at New York; goods to be taken
from alongside as soon as vessel is ready to discharge.

"HELLER, HIRSCH & CO.

"Accepted, Allentown, Pa., April 24, 1883.

"THE ALLENTOWN M'F'G CO.,

"A. J. BRENING, *Treas.*"

It appeared upon the trial that the kainit was shipped at a place called Staasfurt, in Germany, and that the mine there from which it was taken belonged to that government. The process of loading and transporting it to Hamburg is described by one of the plaintiffs' witnesses.

It also appears that the plaintiffs purchased the kainit for delivery to the defendant, and paid for it through the house of Lazard Frere, who have a banking house in this city, and also in London and in Paris. The quantity paid for by them was 320 tons, which was the amount they understood was delivered and for which they were paid by the defendant, as per contract.

When the news of the arrival of the kainit was sent to the defendant it was so paid for on the supposition that 320 tons were secured and ready for delivery. When it finally reached its destination, having been taken away from the vessel in which it was transported to this country, a shortage of eighty-five tons was discovered, and it was this shortage that was set up as a counter-claim against the promissory note sued upon herein. It thus appears that the plaintiffs paid for 320 tons of kainit which was to be shipped from Germany, and charged the defendant for that quantity, and for which payment was made as already stated.

The plaintiffs insist that although there may have been a shortage, and assuming that the verdict of the jury upon that subject was conclusive, yet, nevertheless, under the terms of the contract, they are relieved from any personal responsibility on the subject. The contract, as will have been seen, provides for the payment of seven dollars and twenty-five cents per ton upon " foreign invoice weight," terms " cash against German analysis and European weight return." And the papers having been received and put in evidence showing the German analysis and the European weight return, and such weight return showing 320 tons, it is insisted that the defendant was bound by the weights indicated by the foreign invoice and the European weight return. We do not see how this can be questioned. The kainit, as we have already discovered, was taken from a government mine in Germany and transported to Hamburg, there to be shipped to this country, and the plaintiffs doubtless knowing or believing they should be bound by the foreign weight in the payment of their purchase for this market, made the contract

set up and from which it appears they contracted on foreign invoice weights, German analysis and European weight return, according to which the defendant was to pay. Of course they had a right to make such a contract to protect themselves against any shortage that might occur without their fault, and, therefore, they accepted the papers establishing the fact of foreign weight and German analysis, and paid according to the weight proved, as already stated, by such papers which had been received, and charged the defendant accordingly.

Indeed this meaning or interpretation of the contract was proved, and without objection, by witnesses called on behalf of the plaintiff. Mr. White said he was accustomed to transactions of purchase and sale of kainit with foreign houses, and that the words " cash against German analysis and European weight return " meant cash on the presentation of the documents and showing the cost of insurance and freight paid, and showing that such quantity had been shipped as stated.

Mr. Weidinger also testified that he had been engaged in the business of fertilizers for a number of years, and was accustomed to transactions in kainit salts on foreign purchases, and that the words " cash against German analysis and European weight return " meant that cash is to be paid on the presentation of the foreign invoice and the European return, and other papers that may be mentioned in the contract. And James E. Heller, one of the plaintiffs, and who in the course of his evidence produced the documents relating to the weight and analysis, was asked what the words " cash against German analysis and European return weight " meant, and he said : " The meaning is, that the cash is to be paid on the delivery of these documents to the buyer with the goods, ex-vessel."

It would thus appear, according to the custom in reference to such contracts and their interpretation in commercial life, that the buyer takes the risk and not the seller, in the absence, of course, of any fraudulent practices on the part of the vendor by which the quantity is diminished. Here there is no evidence to justify the conclusion that any portion of the kainit shipped for delivery to complete the contract made between the parties was lost on shipboard, or in any other way through the fault of the plaintiffs. The

application of such a rule as this would seem to be harsh, but it is required by the terms of the contract, the interpretation of it by persons familiar with the subject and the terms employed in it, and therefore the responsibilities and dangers are assumed by the vendee. When the intention of the parties is clearly expressed, every court is bound by it, however capricious it may be. (Chitty on Cont. [8th Am. ed.], 87.)

If this conclusion were not considered controlling, the judgment would have to be affirmed, inasmuch as the jury have passed upon the question of shortage upon testimony, perhaps, to some extent, in conflict, but abundantly sufficient to justify the conclusion that there was a shortage to the extent they have declared it to exist. This case is, therefore, disposed of upon a construction of the contract against the right of the defendant to assail the German analysis and foreign weight, as disclosed by the documents received and proved upon the trial, and more particularly as it is shown the plaintiffs themselves paid for the quantity which they declared to have been purchased and transported on account of the contract.

It is contended on behalf of the defendant that the plaintiffs were bound to establish by competent evidence, *aliunde* the documents, that 320 tons of kainit were actually loaded upon the Paulina, the vessel in which the kainit was carried to this country, and that neither the ship's papers nor the foreign weight nor the bills of lading prove the fact. But it is quite clear, from what has already been stated, that the defendant bound itself to accept the papers which were received by the plaintiffs in consequence of the peculiar character of the contract. The defendant estopped itself from contesting, under the terms of the contract, the analysis of weight indicated by the foreign documents, and upon which the plaintiffs themselves acted in the payment of the kainit as to quantity and quality.

Diligent search has been made to find an adjudication illustrative of this particular contract but none has been found, and indeed none was suggested by the respective counsel whose briefs indicate research; and, therefore, the disposition of the case is a matter of impressions as to the contract, its meaning, force and the obligations and burdens assumed by its terms by both parties. It should be noted that the defendant offered no evidence to show that the mean-

ing of the words " cash against German analysis and European weight return " was not as was stated by the plaintiffs' witnesses, and, therefore, there was no conflict upon that subject; indeed, the testimony is all one way.

The request to charge upon this interpretation of the contract, which was refused was, for the reasons stated, erroneous. The construction of the contract herein adopted was one insisted upon at the trial but rejected, and the plaintiffs protected their rights by proper exceptions.

For these reasons the judgment should be reversed and a new trial ordered, with costs to abide the event.

DAVIS, P. J., and DANIELS, J., concurred.

Judgment reversed, new trial ordered, costs to abide event.